UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEBORAH A. TRUDEL, *et al.*,

Plaintiffs,

v.

SUNTRUST BANK, *et al.*,

Defendants.

Civil Action No. 15-1966 (JEB)

## MEMORANDUM OPINION

As part of their extended effort to recover one chunk of their globally dispersed inheritance, the estate and one son of deceased Ukrainian millionaires Yevgenyi Scherban and Nadejda Nikitina now move for a default judgment against Defendant Gwynfe Holding Ltd – a Virgin Islands corporation alleged to have converted $282,000 from a SunTrust Bank account belonging to Scherban and Nikitina. Finding that this Court lacks personal jurisdiction over Defendant, Plaintiffs' Motion will be denied.

**I.   Background**

The Court has already provided a detailed account of the Scherban family history, see Trudel v. SunTrust Bank (Trudel I), 223 F. Supp. 3d 71, 76-81 (D.D.C. 2016), and disposed of all claims against Defendant SunTrust in its most recent Opinion. See Trudel v. SunTrust Bank (Trudel II), 2018 WL 564557 (D.D.C. Jan. 25, 2018). The discussion here is therefore limited to a 1996 wire transfer from SunTrust account 5216 to a Czech bank account owned by Gwynfe.

Before Scherban's and Nikitina's deaths on November 3, 1996, the 5216 SunTrust account allegedly contained over one million dollars. See ECF No. 43 (Second Amended Complaint), ¶ 41. On December 17, 1996, SunTrust received a fax signed "N. Nikitina"

1

requesting that the Bank transfer via wire $282,000 from Account 5216 to a Czech Republic bank account held by Gwynfe.  See SAC, ¶¶ 45-46.  Among other suspicious circumstances (*e.g.*, Nikitina was deceased), the fax misspelled the name of the Czech bank and did not use SunTrust's wire-transfer form.  Id., ¶¶ 52-53.  The transfer was approved anyway.  Id., ¶¶ 48-51.  The family later discovered in 2014 or 2015 that Gwynfe was incorporated in the British Virgin Islands until its dissolution sometime after 1999.  Id., ¶¶ 57-58.  In addition to suing SunTrust, Plaintiffs named Gwynfe as a Defendant and have recently sought an entry of default against it.  See ECF No. 98.  On January 17, 2018, the Clerk acceded to that request.  See ECF No. 99.  Plaintiffs now move for default judgment.

**II.     Legal Standard**

After a default has properly been entered by the Clerk, a party may move the court for a default judgment.  See Fed. R. Civ. P. 55(b)(2).  Before entering judgment against an absent defendant, however, "a court should satisfy itself that it has personal jurisdiction" over that defendant.  Mwani v. bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005).  Although plaintiffs retain "the burden of proving personal jurisdiction, [they] can satisfy that burden with a *prima facie* showing."  Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 424 (D.C. Cir. 1991) (citation omitted).  Yet, bare allegations and conclusory statements are insufficient.  Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001).  Further, a plaintiff cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any single defendant.  See Rush v. Savchuk, 444 U.S. 320, 332 (1980).

**III.    Analysis**

Plaintiffs here would have satisfied the standard for default judgment against Gwynfe were it not for one critical obstacle – personal jurisdiction.  The Court, concerned that Gwynfe may not properly be sued here, asked Plaintiffs to establish why such jurisdiction exists, or, in its absence, why the claim against Gwynfe should not be dismissed without prejudice.  See Minute Order of March 1, 2018.  Shortly thereafter, Plaintiffs filed a memorandum in response.  See ECF No. 106.

There are two types of personal jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  In this case, the District of Columbia clearly lacks general personal jurisdiction over Gwynfe as it is not incorporated here and does not conduct any business in D.C.  See id. ("A court may assert general jurisdiction over foreign . . . corporations . . . when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.") (internal quotation marks and citation omitted).  Whether a non-resident defendant is subject to specific personal jurisdiction in this Court depends on whether its conduct satisfies the District of Columbia's long-arm statute, D.C. Code § 13–423, which in relation to transacting business here is coextensive with the due-process clause.  See Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004).

To establish such jurisdiction, a plaintiff must demonstrate that: "(1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'"  Nat'l Resident Matching Program v. Elec. Residency LLC, 720 F. Supp. 2d 92, 98

(D.D.C. 2010) (citation omitted).  Because Plaintiffs have not alleged that Gwynfe conducted <u>any</u> business in or had <u>any</u> contacts with the District of Columbia, they cannot clear the first three hurdles.

Plaintiffs' arguments to the contrary, meanwhile, are unconvincing.  The primary focus of their Response is to prove that Gwynfe is subject to <u>Florida's</u> long-arm statute.  <u>See</u> Response at 4-9 ("The nucleus of the facts . . . took place in Florida," and "[i]t is well established that a physical presence of the defendant in Florida is not required for an exercise of a personal jurisdiction under Florida's long arm statute.").  Even if that is true, it is beside the point: personal jurisdiction hinges on whether Defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," Fed. R. Civ. P. 4(k)(1)(A) – in this case, the District of Columbia, not Florida.  Plaintiffs additionally argue that because 28 U.S.C. § 1391 provides that "a defendant not resident in the United States may be sued in any judicial district," Gwynfe may be sued in this court.  <u>See</u> Response at 2-3.  This provision, however, pertains to venue and not personal jurisdiction.

Finally, Plaintiffs allege, for the first time, that Gwynfe violated several federal anti-racketeering statutes and that these statutes provide for extra-territorial jurisdiction over Gwynfe in any federal district court.  <u>Id.</u> at 9-10.  Unfortunately for Plaintiffs, they did not raise any of these claims in their Complaint.  Even if they had, this Court might well still lack personal jurisdiction over Gwynfe given that, as Plaintiffs have argued, Defendant is likely subject to jurisdiction in Florida.  <u>See</u> Fed. R. Civ. P. 4(k)(2)(A) (personal jurisdiction over federal claim against foreign defendant only proper if "defendant is not subject to jurisdiction in any state's courts of general jurisdiction").

The Court will not only deny Plaintiffs' Motion for Default Judgment but will also dismiss the case against Gwynfe without prejudice. "[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) (citing Garberg & Associates Inc. v. Pack-Tech International Corp., 115 F.3d 767, 771-72 (10th Cir. 1997)). Where, as here, the Court has provided Plaintiffs "the opportunity to assert facts to establish the exercise of personal jurisdiction over a nonresident defendant," dismissal is appropriate. Facebook, Inc. v. Pedersen, 868 F. Supp. 2d 953, 957 (N.D. Cal. 2012); see also Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010) ("The District Court did not err in raising the issue of personal jurisdiction *sua sponte* and dismissing the complaint on that ground because [defendant] had not appeared to defend [plaintiff's] claim.").

### IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order denying Plaintiffs' Motion for Default Judgment and dismissing the case against this Defendant without prejudice. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 22, 2018

5