UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH A. TRUDEL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SUNTRUST BANK, *et al.*, <br><br> Defendants. | Civil Action No. 15-1966 (JEB) |

### MEMORANDUM OPINION

This case began decades ago, with the assassinations of Yevgenyi Scherban, a Ukrainian businessman, and Nadejda Nikitina, his wife. Scherban left more than $100 million behind, along with three sons — Evgenyi, Ruslan, and Yevgen — who have since been hunting for their missing inheritance. As part of that quest, they sued Defendant SunTrust Bank, which allegedly mishandled an account holding a sliver of Scherban's fortune. In its most recent Opinion, the Court granted summary judgment in favor of SunTrust, "thereby closing the book on the Bank's role in this unfortunate tale." Trudel v. SunTrust Bank (Trudel II), 2018 WL 564557, at *1 (D.D.C. Jan. 25, 2018). Or so it thought. Plaintiffs now seek to write an epilogue, asking the Court to reconsider its decision or accept their proposed Third Amended Complaint. The Court will decline both invitations.

**I.      Background**

The Court has already provided a detailed account of the Scherban family history, see Trudel v. SunTrust Bank (Trudel I), 223 F. Supp. 3d 71, 76-81 (D.D.C. 2016). For today, it suffices to say that around 1994, Scherban opened a savings account (with terminal digits 5216) with SunTrust at its branch in Boca Raton, Florida. Plaintiffs allege this account once housed

1

more than a million dollars, but over time, its funds mysteriously dwindled. To wit, a statement dated March 31, 2001, shows $3,773.04 remaining, yet SunTrust has little explanation of how hundreds of thousands of dollars vanished. See ECF No. 71-2 (Pl. Reply to Mot. to Reopen Discovery). In 2003, the Bank apparently closed the account, but it again offers few details as to what happened to the $3,773 balance.

On November 6, 2015, the three sons brought suit in this Court, alleging *inter alia*, that SunTrust had mishandled the account from 1996 to 2003. After Deborah Trudel (the representative of Nikitina's estate) was subbed in for Evgenyi and Yevgen as a proper plaintiff, the Court dismissed the lion's share of the Complaint, holding that ten of the twelve counts were either untimely or had failed to state a claim. That left only two counts standing — one for accounting and one for fraudulent concealment — and on January 25, 2018, the Court granted summary judgment in favor of SunTrust on both. See Trudel II, 2018 WL 564557. Plaintiffs now ask the Court to either (1) reconsider its ruling on the fraudulent-concealment count or (2) reopen the case so that they can amend their Second Amended Complaint. See ECF No. 104 (Mot. to Alter Judgment).

## II.     Legal Standard

Ordinarily, leave to amend a complaint under Federal Rule of Civil Procedure 15(a) "shall be freely given when justice so requires." Under Rule 15, a district court must provide sufficient reason to deny leave to amend, such as "undue delay, bad faith or dilatory motive . . . [or] repeated failure to cure deficiencies by [previous] amendments." Foman v. Davis, 371 U.S. 178, 182 (1962). The entry of final judgment, however, is a game changer. At that point, a plaintiff can amend his "complaint only by filing . . . [a] motion to alter or amend a judgment" under Rule 59(e) "combined with a Rule 15(a) motion requesting leave of court to amend [his]

complaint." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). "Rule 15(a)'s liberal standard . . . governs once the court has vacated the judgment, . . . [b]ut to vacate the judgment, Appellants must first satisfy Rule 59(e)'s more stringent standard." Id.

"A Rule 59(e) motion is 'discretionary' and need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Id. (citation omitted); see also 11 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2810.1 at 158-62 (3d ed. 2017) (noting "four basic grounds" for Rule 59(e) motion include "manifest errors of law or fact," "newly discovered or previously unavailable evidence," "manifest injustice," and "intervening change in controlling law").

**III.   Analysis**

Unhappy with the Court's ruling, Plaintiffs move for reconsideration on three grounds. Generously construed, their arguments fall into three camps: (1) manifest injustice; (2) manifest error of law and fact; and (3) newly discovered evidence. The Court discusses each in turn.

A.   Manifest Injustice

Plaintiffs believe the Court should re-open the case because of a "[r]egrettable procedural surprise": they filed only a "provisional" opposition to SunTrust's Motion for Summary Judgment, they say, and expected either a future status conference or further discovery before a ruling. See Mot. at 1-3. This argument has several flaws. First, the status conference. Trudel and Ruslan latch onto a Minute Order, which advised, "At the next status conference (yet to be set), Plaintiffs shall provide further information on service of Defendant Gwynfe." Minute Order of Sept. 27, 2017. That status conference, however, related to a wholly different Defendant — Gwynfe Holding Ltd., a Virgin Islands corporation that has never appeared in this case — and

3

whether Plaintiffs could effect service on it. The Court need not have detained SunTrust's summary-judgment motion for a status hearing on that separate issue. Second, the Court did consider whether to defer a summary-judgment ruling to allow additional discovery. It declined to do so, reasoning that after a lengthy discovery process, it had "all the information needed to rule on summary judgment, and none of Plaintiffs' proposed avenues could yield facts that would change the outcome." Trudel II, 2018 WL 564557, at *12.

Third, to the extent Plaintiffs wanted to amend their Complaint in light of what they had already discovered, they should have moved to do so. As the Court explained, their attempt to "reserve[]" the right to amend through summary-judgment briefing was improper, id.; there is simply no such thing as a "provisional" summary-judgment opposition. In any event, the Court ultimately addressed Plaintiffs' newest theory — namely, that SunTrust closed their account with at least $3,773 remaining and fraudulently concealed that fact by failing to escheat the balance to Florida. Id. at *6. Although the Court noted the addition was procedurally improper, it nevertheless went on to conclude that any such claim would be time-barred under Florida's 12-year statute of repose. Id., at *6-7. Not surprisingly, Plaintiffs also challenge that holding, to which the Court now turns.

      B.      Manifest Error

Trudel and Ruslan attack the Court's time-bar holding on two grounds. They first criticize the Court for addressing Florida's statute of repose *sua sponte*. They have scoured Defendant's brief "with a pencil and eye's perception," they claim, yet the term "repose" is nowhere to be found in SunTrust's summary-judgment briefing. See Mot. at 13. True enough. As the Court explained, however, a statute-of-repose defense is "an absolute jurisdictional bar to

4

a tardily filed claim," so it had an affirmative duty to consider whether Plaintiffs' claims were time-barred on that ground.  Trudel II, 2018 WL 564557, at *7 (citation omitted).

Nor should the holding have been a "shocking surprise," as Plaintiffs claim.  See Mot. at 6, 13-14.  At the motion-to-dismiss stage, they similarly contended that "SunTrust closed [the 5216] account in January 2003" and failed to "giv[e] that unclaimed property to the State of Florida."  Trudel I, 223 F. Supp. 3d at 86.  At that time, they brought eight common-law counts related to these acts, and the Court rejected each as time-barred under the applicable statute of limitations or repose.  Id. at 90.  Having tried to shoehorn the theory into another count, Plaintiffs should have anticipated that the same timeliness questions might arise.

Second, Trudel and Ruslan ask the Court to revisit its decision because SunTrust has not proven that the 5216 account was empty when closed.  See Mot. at 15 ("[T]here is no evidence as though there were no moneys on the account at the time of its closure.") (emphasis omitted).  In other words, they believe that "a small amount of $3,773, most likely, did remain on Account x5216 on the day of its closing, allegedly on January 22, 2003."  Id. at 17.  This argument, however, fundamentally misunderstands this Court's holding.  In granting summary judgment, the Court assumed, as Plaintiffs alleged, that SunTrust closed the 5216 account with money in it.  That is, it accepted that "Defendant's last culpable act was in January 22, 2003, when it allegedly closed the 5216 account without either a) escheating the [remaining funds] to Florida or b) informing Plaintiffs that money remained."  Trudel II, 2018 WL 564557, at *7 (emphasis added).  Even then, however, "the time limit expired by January 22, 2015, ten months before the current lawsuit arrived."  Id.

C.  New Evidence

Finally, Plaintiffs provide a laundry list of purportedly newly discovered evidence, each incident of which occurred within Florida's twelve-year statute of repose. They are:

- December 2003: SunTrust told James Weber, an attorney in the probate manner, that it had no "assets to which Nikitina's estate would be entitled."
- December 2003: Yevgen, one of the sons, visited SunTrust's Boca Raton branch and was told there were not accounts or assets associated with Nikitina or Ruslan.
- October 2005: Yevgen again visited the Boca Raton branch and received the same response.
- April 2008: Leslaw Hetmanczyk, an investigator retained by Evgenyi and Ruslan, visited the Boca Raton branch and received the same response.
- May 2011: Hetmanczyk again visited the Boca Raton branch and received the same response.
- October 2013: Evgenyi visited SunTrust's office in New York City and received the same response.

See Mot. 7-12.

Trudel and Ruslan claim these new allegations require the Court to vacate its judgment and allow them leave to amend under Rule 15. For the Court to reopen the case, however, the party seeking relief "must have been justifiably ignorant of [the newly discovered evidence] despite due diligence." Lightfoot v. Dist. of Columbia, 555 F. Supp. 2d 61, 68 (D.D.C. 2008) (quoting United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001)). The majority of Plaintiffs' "new" evidence relates to actions taken by the three sons. Each was originally a plaintiff in this action (and, indeed, Ruslan remains one), and all were represented by the same lawyer who has continued prosecuting the case. Further, each previously provided multiple affidavits in this case. See, e.g., ECF No. 10-1 (Ruslan); No. 10-2 (Evgenyi); No. 10-3 (Yevgen). It is not justifiable that counsel failed to unearth (or at least plead) these additional allegations during three years of litigation.

Perhaps recognizing as much, Plaintiffs focus entirely on Hetmanczyk in their Reply. They there maintain that the Court should treat his testimony as newly discovered because

6

neither "Plaintiffs nor their counsel have control over Hetmanczyk." Reply at 2-3. This claim, however, ignores the fact that Plaintiff did obtain and file an affidavit from the investigator on August 9, 2016 — well before this Court granted summary judgment. See ECF No. 40-3 (First Hetmancyzk Affidavit). Trudel and Ruslan now suggest that as a former police officer, Hetmanczyk was not inclined to be "talkative" with them, and that their counsel did not in fact know of his 2008 and 2011 inquires at the Bank. See Reply at 2. This excuse falls flat, as the point is that counsel should have discovered this evidence. It was Plaintiffs who hired Hetmanczyk and they were thus well equipped to demand relevant information. See ECF No. 104-3 (Second Hetmanczyk Affidavit), ¶ 12 (noting he had discussed his inquires in "subsequent meetings" with Ruslan and Evgenyi in Ukraine). The Court therefore sees no justifiable basis for failing to introduce his testimony until judgment was entered.

   Plaintiffs protest that in evaluating their proposed Third Amended Complaint, the Court should ignore Rule 59 and look only to Rule 15(a)'s more liberal standard, see Mot. 3-7, but the D.C. Circuit's opinion in Firestone is directly to the contrary. See 76 F.3d at 1208. In any event, the result would not change. It is well established that undue delay "is a valid reason to reject a party's attempt to add a new theory of liability to a complaint." Elkins v. District of Columbia, 690 F.3d 554, 565 (D.C. Cir. 2012). "In a post-judgment situation, delay without explanation is sufficient reason to deny a motion to amend." Figgie Int'l Inc. v. Miller, 966 F.2d 1178, 1181 (7th Cir. 1992) (denying leave to amend even if the "Rule 59(e) motion [were] evaluated under the standards governing Rule 15(a)"). As just explained, Plaintiffs offer no compelling reasons for their delay, and they certainly cannot attribute it to SunTrust. But allowing them to go back to the drawing board now — after protracted discovery and a decision on summary judgment — would be highly prejudicial to the Bank. See Atchinson v. District of Columbia, 73 F.3d 418,

426 (D.C. Cir. 1996) ("Consideration of whether delay is undue . . . should generally take into account the actions of other parties and the possibility of any resulting prejudice.").

### IV. Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Reconsideration and for Leave to Amend. It will issue a contemporaneous Order so stating.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 4, 2018